IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JOHN COBB, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 2:25-cv-08752-DCN |
| CHARLESTON COUNTY SCHOOL DISTRICT, | ) ) ) ) | **ORDER** |
| Defendant. | ) ) | |

The following matter is before the court on defendant Charleston County School District's ("CCSD") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), ECF No. 16. For the reasons set forth below, the court grants in part and denies in part CCSD's motion to dismiss and grants in part and denies in part CCSD's motion for a more definite statement.

## I. BACKGROUND

This action arises from a qui tam suit concerning federal funding from the Coronavirus Aid, Relief, and Economic Security Act of 2020 ("CARES Act") and the Elementary and Secondary School Emergency Relief Fund ("ESSER") ECF No. 1, Compl. ¶ 9. Plaintiff-Relator John Cobb ("Relator") had been employed by CCSD as the executive director of federal programs since 2022. Id. ¶¶ 5, 9. In his role at CCSD, Relator was tasked with reviewing project proposals from vendors to determine whether they complied with the federal guidelines that govern ESSER funding. Id. ¶¶ 13–15. Relator alleges that CCSD misappropriated CARES Act and ESSER funds and

1

terminated his employment for questioning whether CCSD had lawfully obtained and used its federal funds. Id. ¶¶ 9–26.

### A. Statutory Framework: CARES Act and the ESSER Fund

In response to the COVID-19 pandemic, Congress passed a comprehensive relief effort known as the CARES Act in March 2020. Pub. L. No. 116-136, 134 Stat. 281 (2020). The CARES Act established the ESSER fund, which allocated billions of dollars in aid for elementary and secondary schools to "prevent, prepare for, and respond to coronavirus." See CARES Act § 18003. ESSER funding relief grants were disbursed to each state's education agency for distribution to local school districts. Id. §§ 18003(a)–(b). The CARES Act provided that school districts were permitted to use ESSER funding to maintain operations, facilitate remote learning, purchase educational technology, and meet the unique academic and mental health needs of students. Id. § 18003(d).

### B. Relator's Factual Allegations: CCSD and ESSER Funds

CCSD's procedures for obtaining ESSER funding had roughly six steps. See Compl. ¶¶ 14–18. First, a vendor submitted a project proposal to CCSD. Id. ¶ 14. The project proposal was initially reviewed by the deputy superintendent of CCSD, Anita Huggins ("Huggins"). Id. If Huggins granted initial approval, Relator reviewed the project proposal to determine whether it complied with federal guidelines for obtaining ESSER funding. Id. ¶ 15. After Relator's compliance determination, the project proposal was then returned to Huggins for final authorization. Id. CCSD then put the project proposal out for bidding and contracting unless the project proposal was deemed as "sole

source".[1]  Id. ¶¶ 16–17.  Finally, CCSD paid the vendor for the project upfront and submitted the project contract to the South Carolina Department of Education ("SC DOE") for reimbursement from ESSER funds received by the State under the CARES Act.  Id. ¶ 18.

Relator identified four specific projects for which CCSD allegedly "failed to abide by the proper procedure of obtaining federal funds through ESSER": D4, D20, D23, and Charleston Stage.  Id. ¶ 19.  He alleges that Project D4—an $800,000.00 project for an athletics field in North Charleston—"did not comply with federal procurement protocol and was an improper use of ESSER funds."  Id. ¶ 23.  For Project D20, Relator alleges that he was concerned with "the unusually high salary paid to a consultant, which [he] viewed as an inappropriate use of federal funding."  Id. ¶ 22.  Relator believed Huggins improperly designated Project D23 as a sole source project.  Id. ¶¶ 20–21.  As to Project Charleston Stage, Relator claimed that the $221,000.00 contract for theater-related student enrichment services wrongfully bypassed the bidding process as a sole source project and that the funds were ultimately used for other purposes within CCSD.  Id. ¶ 23.  Relator also alleges, generally, that on two other occasions he did not sign off

---

[1] Because CARES Act and ESSER funding are distributed to SC DOE through a federal grant program, a local school district like CCSD must comply with the methods and qualifications contained in the federal procurement regulations.  2 C.F.R. §§ 200.317–200.327.  Relevant to the instant case, there are five circumstances in which it is permissible for CCSD to utilize noncompetitive procurement methods: (1) the amount of the project transaction does not exceed the micro-purchase threshold; (2) the project can only fulfilled by a single source; (3) a public exigency or emergency disallows full public notice and solicitation; (4) written approval by the federal government or SC DOE; or (5) competition is determined to be inadequate after soliciting multiple sources.  See id. § 200.320.

on project proposals because they were not sole source projects, but Huggins contacted the SC DOE and stated that they were. Id. ¶¶ 25–26.

Relator filed this action on July 29, 2025. ECF No. 1, Compl. He asserts causes of action against CCSD under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1) and the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8). Id. ¶¶ 7–8. On December 17, 2025, the United States declined to intervene. ECF Nos. 10, 11.

CCSD filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) on February 5, 2026. ECF No. 16. Relator responded in opposition on February 19, 2025, ECF No. 18, to which Relator replied on February 24, 2026, ECF No. 19. The court held a motion hearing on April 27, 2026. ECF No. 21. As such, the motion is fully briefed and now ripe for the court's review.

## II.   STANDARD

### A.  Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, Rule 8 requires a complaint to contain: (1) "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a

demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). Moreover, under Rule 8(d), "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Allegations that are "merely consistent with" a defendant's liability "stop[ ] short of the line between possibility and plausibility of entitlement to relief. " Twombley, 550 U.S. at 557 (internal quotation marks and citation omitted). Determining whether a complaint states a plausible claim for relief is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679.

### B. Rule 9(b) Pleading Standards

Rule 9(b) provides that a plaintiff alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s stringent particularity requirement, the plaintiff is

required to describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Grant v. United Airlines Inc., 912 F.3d 190, 197 (4th Cir. 2018) (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)).  "More precisely, the complaint must allege 'the who, what, when, where and how of the alleged fraud.'"  United States v. Savannah River Nuclear Sols., LLC, 2016 WL 7104823, at *9 (D.S.C. Dec. 6, 2016) (quoting United States ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th Cir. 2014).  A plaintiff's failure to comply with Rule 9(b)'s pleading requirements "is treated as failure to state a claim under Rule 12(b)(6)."  United States ex rel. Taylor v. Boyko, 39 F.4th 177, 189 (4th Cir. 2022) (quoting Dunn v. Borta, 369 F.3d 421, 426 (4th Cir. 2004)).  Rule 9(b) "applies with special force to FCA claims," Grant, 912 F.3d at 197, serving to ensure that the defendant is provided with sufficient notice of their alleged misconduct, prevent frivolous lawsuits, and eliminate fraud actions premised on information expected to be uncovered only after discovery.  See United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013) (quoting Harrison v. Westinghouse Savannah River Co. (Harrison I), 176 F.3d 776, 784 (4th Cir. 1999)).

## III.  DISCUSSION

CCSD moves for dismissal of Relator's FCA and WPA claims pursuant to Rule 12(b)(6).  ECF No. 16.  In the alternative, CCSD moves for a more definite statement under Federal Rule of Civil Procedure 12(e).  Id.  The court analyzes each claim in turn.

### A. FCA

The FCA, in relevant part, imposes liability on any person who

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

31 U.S.C. §§ 3729(a)(1)(A)–(B).

To state a claim under the FCA, a relator must establish: "(1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay out money or to forfeit money due." Savannah River Nuclear, 2016 WL 7104823, at *9 (quoting United States ex rel. Harrison v. Westinghouse Savannah River Co. (Harrison II), 352 F.3d 908, 913 (4th Cir. 2003)). "Failure to adequately allege any of these elements dooms a claim." United States ex rel. Wheeler v. Acadia Healthcare Co., Inc., 127 F.4th 472, 487 (4th Cir. 2025) (quoting Taylor, 39 F.4th at 188).

At the motion hearing, counsel for Relator stated that he was not in possession of evidence that conclusively demonstrates that CCSD had received CARES Act or ESSER funding from SC DOE. ECF No. 21. Although Relator identified conduct by CCSD that he alleges is improper, he was unable to adequately explain if and how CCSD "caused the government to pay out money," as is required to state a plausible and particularized FCA claim. See Savannah River Nuclear, 2016 WL 7104823, at *9. Consequently, the court ordered the parties to meet and confer regarding whether CCSD had submitted and/or received CARES Act or ESSER funding from SC DOE for Projects D4, D20, D23, and Charleston Stage, or the two unnamed projects alleged in his complaint. ECF

No. 21.  At the court's conference call on Thursday, June 18, 2026, counsel for Relator confirmed that he has obtained financial records to support the allegations of the FCA claim.

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Rule 12(e) motions are read in conjunction with Rule 8's mandatory pleading requirements.  Hodgson v. Va. Bapt. Hosp., Inc., 482 F.2d 821, 822 (4th Cir. 1973).  "A Rule 12(e) motion is typically 'designed to strike at unintelligibility rather than simple want of detail.'"  Pendarvis v. Wilson, 2023 WL 11988175, at *3 (D.S.C. Aug. 11, 2023) (citations omitted).  Consequently, a "Rule 12(e) motion has a higher standard than that of a Rule 12(b)(6) motion in that a pleading which satisfies the liberal pleading standards above described may be nonetheless appropriately challenged as overly vague with a Rule 12(e) motion."  White v. Homer Laughlin China Co., 2019 WL 2518138, at *2 (N.D.W. Va. Jun. 18, 2019) (citing 5B Wright & Miller's Federal Practice and Procedure § 1356).

The court finds that requiring Relator to file an amended complaint is in the interest of justice because it will "potentially allow for resolution of this case on the merits."  See Pendarvis, 2023 WL 11988175, at *5; see also Shipp v. Hargan, 2019 WL 316726, at *3 (D. Md. Jan. 24, 2019) (noting "the Fourth Circuit's strong preference for resolving cases on their merits" and directing a plaintiff to amend their complaint pursuant to Rule 8), aff'd, 2023 WL 3172172 (4th Cir. May 1, 2023).  A more definite statement of Relator's FCA Claim is also necessary to address Relator's vague, shotgun

pleading.[2]  See Compl.; Alexander v. S.C. Dep't of Transp., 2021 WL 2635446, at *2

(D.S.C. June 25, 2021) (describing a shotgun pleading as one in which "it is virtually

---

[2] The court does not overlook the deficiencies in Realtor's filings.  Relator's six-page complaint is factually sparce, unorganized, and reliant on inferences that were only resolved at the court's motion hearing and conference call.  See Compl.; ECF No. 21.  In its motion to dismiss, CCSD argues that Relator has failed to state a FCA claim because his complaint neither satisfies Rule 9(b)'s particularity pleading standard nor alleges sufficient factual allegations to plausibly establish the elements of the claim.  ECF No. 16-1 at 4–8.  Relator's opposition provides few substantive arguments as to the elements of its FCA claim, instead it recites the factual allegations of his complaint and appends citations to legal authority that are either inapposite or incorrect.  See ECF No. 18.

A relator must overcome "high hurdles erected by the False Claims Act" to state a claim for relief.  See, e.g., Taylor, 39 F.4th at 201.  Fraud-based claims must meet the plausibility standard of Iqbal and be pled with sufficient particularity to satisfy Rule 9(b)'s heightened pleading standard.  Nathan, 707 F.3d at 455; see United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion.").  Therefore, with the exception of scienter, a realtor's complaint must contain facts to establish each element of presentment, materiality, and causation with plausibility and particularity to state a FCA claim.  Taylor, 39 F.4th at 201; see Universal Health Servs., Inc. v. United States, 579 U.S. 176, 195 n.6  (2016) ("False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)").  Dismissal of a FCA claim under Rule 9(b) is proper to eliminate "fraud actions in which all the facts are learned after discovery" or where a relator lacks "substantial prediscovery evidence" of the alleged fraud.  See Nathan, 707 F.3d at 456; Harrison I, 176 F.3d at 784.

The Fourth Circuit has held that courts are not "unsympathetic to the practical challenges" that a relator may face in obtaining factual and evidentiary support for a FCA Claim.  Grant, 912 F.3d at 197.  A relator is not mandated "to produce documentation or invoices at the outset of a suit, nor are subcontractors or employees who do not have specific knowledge of a company's financial and billing structure precluded from adequately pleading FCA claims."  Id. (internal citations omitted).  However, Rule 9(b) requires that a relator's complaint provide "some indicia of reliability" to demonstrate that an actual false claim was presented to the government, causing payment of federal funds.  Id. at 197 (quoting Clausen, 290 F.3d at 1311).  A relator must "connect the dots, even if unsupported by precise documentation, between the alleged false claims and government payment."  Id.  It is not enough for a relator to "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government."  Nathan, 707 F.3d at 456–57.

9

impossible to know which allegations of fact are intended to support which claims for relief" and likely "water down the rights of parties to have valid claims litigated efficiently and waste scarce judicial resources."). Therefore, the court denies CCSD's motion to dismiss without prejudice as to Relator's FCA claim, grants CCSD's motion for a definite statement of Relator's FCA claim pursuant to Rule 12(e), and orders Relator to file an amended complaint within thirty days of this order.

### B. WPA

CCSD moves to dismiss Relator's claim under the WPA, arguing that the statute does not apply to Relator or CCSD. ECF No. 16-1 at 8–10. Relator's brief in opposition recites the factual allegations complaint, lacks substantive response to CCSD's arguments, and contains no citation to legal authority. See ECF No. 18 at 7–8.

Under WPA, an employer is prohibited from taking "personnel action" against an employee for whistleblowing activity, such as disclosure of information that he believes evidences "any violation of law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). The WPA applies only to an employee in a "covered position in an agency." Id. § 2302(a)(2)(A). A "covered position" is defined as "any position in the competitive service, a career appointee position in the Senior Executive Service, or a position in the excepted service," and an "agency" for purposes of the statute means "an Executive agency and the Government Publishing Office." Id. §§ 2302(a)(2)(B)–(C); see also High v. Genesis Healthcare LLC, 2014 WL 6997492, at *2 (M.D.N.C. Dec. 5, 2014) ("The Whistleblower Protection Act only protects employees in a 'covered position' within an 'agency,' meaning that only employees of an executive

10

branch agency or the Government Printing Office are protected from retaliation based on disclosure of information.").

The court finds that Relator cannot state a WPA claim against CCSD because neither party is within the scope of the statute. See Genesis Healthcare LLC, 2014 WL 6997492, at *2. There are no factual allegations in Relator's complaint that he was terminated from a "covered position" or that CCSD is a qualifying federal "agency". See Compl. Relator's implicit assertion that CCSD may be liable under the WPA because it allegedly received federal ESSER funding is insufficient to bring his claim within the WPA's coverage. See Williams v. Va., State Bd. of Elections, 2012 WL 2878579, at *5 (E.D. Va. July 13, 2012) (finding no authority to support argument that state entity qualifies as an employer under the WPA even if "a vast majority of the funds spent by the [state agency] are derived from federal grants"). At the motion hearing, counsel for Relator conceded that the WPA does not provide a cause of action against CCSD for the alleged retaliatory termination in the instant case. See ECF No. 21. Because Relator has failed to state a WPA claim, the court grants CCSD's motion to dismiss Relator's WPA claim pursuant to Rule 12(b)(6).

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** CCSD's motion to dismiss Relator's WPA claim, **DENIES** without prejudice CCSD's motion to dismiss Relator's FCA claim, and **GRANTS** CCSD's motion for a more definite statement as to Relator's FCA claim. The court **ORDERS** Relator to file an amended complaint within thirty days of this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 26, 2026**
**Charleston, South Carolina**