**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,
*ex rel*. JOHN COBB,

Plaintiff,

vs.

CHARLESTON COUNTY SCHOOL DISTRICT,

Defendant.

CA No. 2:25-cv-08752-DCN

**AMENDED COMPLAINT**
**(Jury Trial Demanded)**

John Cobb ("Cobb") files this Complaint pursuant to the Federal False Claims Act (FCA), 31 U.S.C. §§ 3729 et seq., to recover monies illegally obtained by Defendant Charleston County School District ("CCSD") from the Elementary through the Secondary School Emergency Relief Fund (ESSER) and CARES Act in violation of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320-7b.

Congress signed into law the Coronavirus Aid, Relief and Economic Security (CARES) Act on March 27, 2020, allocating approximately $13.2 billion to State Educational Agencies (SEAs) through the Elementary and Secondary School Emergency Relief Fund (ESSER III Fund). Pub. L. No. 116-136, 134 Stat. 281 (2020). The South Carolina Department of Education received approximately $3.26 billion, of which Charleston County School District received $13.41 million during phase one, $72.63 million during phase two and $163.23 million during phase three. ESSER III Funds may be used for purposes of addressing the impact that COVID-19 pandemic has on elementary and secondary schools, in preventing the spread of disease, preparing and recouping educational losses and maintaining operations, facilitating remote learning, and purchasing educational technology. See CARES Act §

18003.

CCSD began receiving ESSER/CARES funding in approximately 2020. Prior to and from 2022-2024, while John Cobb was the Executive Director of Federal Programs for CCSD, Charleston County School District engaged in an elaborate scheme to knowingly present false or fraudulent claims to the Government; with the intent and in order to obtain federal ESSER and CARES Act funds, based upon and as a result of the false or fraudulent statements by CCSD to the government, the government paid out federal ESSER and CARES Act money to the Charleston County School District. As described more fully below, CCSD intentionally and deliberately submitted false or fraudulent claims, deviating from the proper procurement process with the intent and in order to receive federal funding for improper and unqualified projects to be used for purposes unrelated to the intended goal of mitigating the impact of the COVID-19 pandemic on schools. John Cobb brought these false, fraudulent, illegal and improper statements, claims, submissions and use of federal funds to the attention of his supervisor, Superintendent of Schools, Anita W. Huggins ("Huggins") and as a result was terminated from his position as Executive Director of Federal Programs for CCSD in retaliation. Plaintiff-Relator would respectfully show the Court as follows:

**JURISDICTION AND VENUE**

1. This action arises under the FCA. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1345 and 31 U.S.C. §§ 3730(b) & 3732(a).

2. The Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because Defendant transacts business in this District and numerous acts prohibited by federal law occurred in this District.

3. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a).

4. Mr. Cobb's claims and this Amended Complaint are not based upon the prior public disclosure of allegations or transactions in a criminal, civil, or administrative hearing in which the

Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from news media, as enumerated by 31 U.S.C. § 3730(e)(4)(A). To the extent there has been a public disclosure unknown to Mr. Cobb, he is the "original source", and the public disclosure is a result of Mr. Cobb voluntarily providing this information to the United States prior to filing this *qui tam* action. See 31 U.S.C. § 3730(e)(4)(B).

**PARTIES**

5. John Cobb is a former Executive Director of Federal Programs for the Charleston County School District (CCSD), with over twenty (20) years of experience at CCSD. He was assigned the operative role of Executive Director of Federal Programs for CCSD in 2022 after working as an Assistant Principal and Executive Director of Coaching and Mentoring for the Charleston County School District. As a result of his position as Executive Director of Federal Programs from 2022-2024, Mr. Cobb obtained direct personal knowledge of the facts alleged herein, CCSD intentionally and deliberately submitting false or fraudulent claims to the government, during his employment, specifically interacting with CCSD employee Huggins regarding ESSER/CARES Act fund submissions in addition to several other CCSD employees.

6. Defendant Charleston County School District (CCSD) is an agency of the State of South Carolina, established, created, and existing under and by virtue of the law of the State of South Carolina with its principal place of business as 75 Calhoun Street, Charleston, South Carolina.

[remainder of page intentionally blank]

## STATUTORY AND REGULATORY AUTHORITY APPLICABLE TO THIS CLAIM

### The False Claims Act

7. The False Claims Act (FCA) provides, in relevant part, and imposes liability on any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), plus 3 times the amount of damages which the Government sustains because of the act of that person.
>
> 31 U.S.C. §§ 3729(a)(1)(A)–(B).

## FACTUAL ALLEGATIONS CONCERNING MISAPPROPRIATION OF FEDERAL FUNDS

8. This case involves a federal whistleblower regarding the School District intentionally and deliberately submitting false or fraudulent claims to the federal government for payment, and misappropriation of the Elementary and Secondary School Emergency Relief Fund (ESSER) and CARES Act, leading to the misuse of at least three million dollars ($3,000,000.00).

9. The Elementary and Secondary School Emergency Relief Fund was created by the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, and expanded by the American Rescue Plan Act of 2021, Pub. L. No. 117-2. Congress appropriated the funds to State educational agencies, which awarded them to local educational agencies as subawards.

10. ESSER and CARES Act federal funds are provided to the states and then distributed to local educational agencies to address the impact of the COVID-19 pandemic on K-12 students and schools.

11. The South Carolina Department of Education ("SCDE") was the State educational agency administering ESSER funds in South Carolina. CCSD received ESSER I, ESSER II and ARP ESSER (ESSER III) funds from SCDE as a subrecipient of a federal award.

12. The proper purposes of the funds include providing social-emotional support and services to students and families; implementing COVID-19 safety protocols and procedures; addressing learning loss and academic needs due to the pandemic.

13. As a subrecipient of federal financial assistance, CCSD was bound by the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, 2 C.F.R. Part 200.

14. Under 2 C.F.R. § 200.319, all procurement transactions for the acquisition of property or services required under a federal award must be conducted in a manner providing full and open competition.

15. Under 2 C.F.R. § 200.320(c), a noncompetitive procurement may be awarded only if one or more of five circumstances applies: the aggregate dollar amount does not exceed the micro-purchase threshold; the item is available only from a single source; a public exigency or emergency will not permit a delay resulting from publicizing a competitive solicitation; the Federal awarding agency or pass-through entity expressly authorizes a noncompetitive procurement in response to a written request from the non-Federal entity; or, after solicitation of a number of sources, competition is determined inadequate.

16. On August 4, 2023, SCDE issued a memorandum captioned "Noncompetitive Procurements with Federal Funds" addressed to all School District Business Officials and School District Procurement Officials, over the names of Steven Strother, Interim Chief Financial Officer and Finance Director of the Office of Finance, and Elsie Montgomery, Director of the Office of Procurement. <u>See</u> State of South Carolina Department of Education, *Noncompetitive Procurements*

*with Federal Funds*, August 4, 2023.

17. The memorandum incorporated 2 C.F.R. §§ 200.319 and 200.320, and instructed subgrantees that "[t]he subgrantee's existing exemption list cannot be used as the determination for approval with federal funds."

18. With respect to a claim that an item is available only from a single source, the memorandum instructed that "evidence of research to determine if other sources exist must be documented," and that the subgrantee "must abide by their documented procurement policy."

19. The memorandum directed that each SCDE program office administering subawards would maintain a Request for Noncompetitive Procurement Approval form to be completed with the approval of the requestor, the business official, the procurement official and the applicable program office, and that the form "should be approved before obligating funds."

20. The memorandum described the governmental bodies subject to these requirements as including "local educational agencies (LEAs, i.e., school districts), other political subdivisions, and state agencies." SCDE thus treated CCSD as a political subdivision.

21. The SCDE Request for Noncompetitive Procurement Approval form (the "NCP form") states on its face that "[t]he subgrantee's exemptions list cannot be used for goods or services purchased with federal funds," that "[t]he request for use of a noncompetitive procurement does not guarantee federal compliance nor is it a guarantee that the request will be approved," that "[a]ll procurement activities are subject to monitoring," and that "[t]he subgrantee must submit adequate documentation related to the request and maintain such documentation for recordkeeping and auditing purposes." See State of South Carolina Department of Education, *Request for Noncompetitive Procurement Approval*.

22. The NCP form requires the requestor to identify the proposed vendor, the total purchase amount and a description of the goods or services, and to "[p]rovide a justification for why

this procurement is a noncompetitive procurement," with the further instruction that the requestor "[m]ust attach evidence to support this request."

23. Each CCSD School relevant to the projects herein, had separate district (Fund 218) accounts established to pay vendors using ESSER/CARES act federal funds.

24. CCSD obtained ESSER/CARES reimbursement by submitting periodic Expenditure Reports to the South Carolina Department of Education. Each report identified the grant number, sub-program, county and district numbers, claim number, period covered, and the expenditures claimed by function and object code.

25. Each Expenditure Report listed the following certification immediately above signature blocks designated for Fund Coordinator, Budget Director and Project Specialist: "CERTIFICATION: I hereby certify that the expenditures shown above have been incurred and paid in accordance with rules and regulations set forth in this program, that payment for this claim is not being duplicated or reimbursed from any other source, and that invoices and other pertinent records required to substantiate this claim are on file and available for AUDIT."

26. Every ESSER/CARES reimbursement claim CCSD submitted therefore contained three express representations: first, that the expenditures were incurred and paid in accordance with program rules and regulations; second, that payment was not duplicated or reimbursed from any other source; and third, that substantiating invoices and records were on file and available for audit.

27. Each of the certifications as to the expenditures for the three (3) projects described herein were false or fraudulent.

28. The School Board's priority relating to the projects herein were to answer School Board questions about contracts that were awarded COVID relief money from the Elementary and Secondary School Emergency Relief Fund (ESSER).

29. The contracts at issue for the three (3) projects described herein were directly

negotiated with vendors without the proper procurement and competitive bidding process.

30. John Cobb began working for the Charleston County School District in 1999 as an assistant principal, later advancing to Executive Director of Coaching and Mentoring, and in September 2022, made a lateral move to become the Executive Director of Federal Programs, specifically working with Anita Huggins regarding submissions by CCSD for ESSER/CARES act federal funds.

31. As Executive Director of federal programs, John Cobb's role included approving ESSER/CARES-funded projects by determining which activities were eligible for federal funding. His responsibility was strictly program approval. John Cobb relied on his prior experience managing federal funds and independently reviewed the state department's general guidelines.

32. The process for receiving federal funds through ESSER begins with a vendor submitting a project proposal to the district. The Superintendent of Schools, Huggins, then reviews the proposal and either approves or denies it.

33. If approved by Huggins, John Cobb would then review the project to determine whether it complies with federal and ESSER guidelines. If he determines it does, he sends it back to Huggins for final authorization. If John Cobb does not approve the project, the finance and procurement departments also withhold approval, and the process ends.

34. If Huggins gives final approval, the proposal is then sent to the procurement office to manage the bidding and contacting process.

35. All projects must go through a bidding process unless they are deemed sole source contracts, meaning no other vendors could provide similar services at a lower cost.

36. The procurement office then submits the project to the State Department for reimbursement. The district pays for the project upfront and is later reimbursed by the State Department with federal ESSER/Cares funds.

37. Initially, upon entering the role, John Cobb reviewed CCSD's ESSER/CARES program and noticed that Steve Hamer, P.E., a prior consultant solicited and negotiated contracts with ESSER/CARES money in a way that did not comply with the Procurement Board.

38. Additionally, several projects among others including District 23 St. Paul's ("D23SP"), District 20 Principal Collaborative Program ("D20PCP"), and District 4 North Charleston ("D4NC") were negotiated with vendors without the competitive bid process and/or failed to abide by the proper procedure of obtaining federal funds through ESSER resulting in the misuse of federal funds.

39. John Cobb worked directly with Huggins, the principal of E.B. Ellington Elementary School and Voung regarding the D23SP project.

40. The D23SP schools project was designed to provide social and emotional support, including theater programs, teacher training, teacher salary, consultant salaries, community involvement and other related expenses. Victor C. Young ("Young"), an improperly vetted contractor submitted invoices for payment of ESSER funds. Huggins negotiated Young's contract/approved and submitted the improper invoices to the State Department of Education for reimbursement of ESSER federal funds.

41. Charleston Stage, under the D23SP project used $221,000.00 of federal funding to provide theater-related services and training for students and teachers. Although it was presented as a sole source contract, the services provided by Charleston Stage were not sole source and therefore should not have bypassed the proper bidding process. Additionally, the funds were used for general school enrichment activities rather than their intended purpose of COVID-19 recovery. There were also two (2) other venues, the Flowertown Players and the South of Broadway Theatre Company, who could provide that same service.

42. The D23SP project was overseen by consultant Young, Managing Director of VCY

Stratagem, LLC, whose role was to manage the project. The hiring of Young raised concerns because CCSD did not go through the ordinary protocols and his position was never put out for bid, his contract was never forwarded to the ESSER Team, and John Cobb was told by Huggins on July 17, 2023, that Young would be the project manager.

43. Young's contract was treated as a sole source contact, though it should not have been, because multiple other individuals could have performed Young's role and/or managed the project. From there Young hired other improper contractors to perform and complete work on D23SP, some of which Young was directed to hire by Huggins. Invoices and accounts were set up to complete the D23SP project, under the direction of Young and were partially paid/reimbursed for invoices. CCSD paid VCY Stratagem, LLC approximately $243,000.00. All contractors for the D23SP were paid out of an ESSER-3 218 account/fund. Huggins gave the directive to a CCSD employee to set up the D23SP accounts and improperly pay/reimburse the vendors, as result of which CCSD misused federal funds.

44. On Nov. 2, 2022, John Cobb flagged the existence of a D23SP proposal, seeking clarity on approvals, and D23SP later involved noncompetitive procurement justification activity on Oct. 6, 2023. John Cobb also voiced specific internal concerns that many of the vendors in the D23SP feeder effort were never awarded contracts on Nov. 29, 2023, alongside the ongoing compliance and budget-control issues.

45. Thus, CCSD knowingly presented false or fraudulent claims to the Government; with the intent and in order to obtain federal ESSER and CARES Act funds and without going through the ordinary and proper protocols related to the D23SP project.

46. The D20PCP project involved downtown elementary, middle and high schools in the district, including Sanders-Clyde Elementary, Charleston Progressive Academy, Julian Mitchell Elementary, Simmons-Pinckney Middel School and Burke High School, providing daycare and

tutorial services to students and teachers, and student entrepreneurship and the primary concern and violations and false or fraudulent claims include a no bid process and failing to follow the procurement process, the unusually high salary of $200,000.00, entering into a contract and paying directly to Barbara Dilligard a consultant/independent contractor, of her own consulting company, d/b/a Karaton Services, LLC for grant writing, grant managing and consultant services as president of Karaton Services, LLC which was an inappropriate and improper use of federal funding.

47. Additionally, Subgranting is when a primary organization receives funds and distributes or allocates a portion of their funding to a secondary organization. The ESSER/CARES program strictly prohibits subgranting. Despite this prohibition, CCSD adopted an improper prime contractor and subcontractor structure to use ESSER/CARES federal funds to pay Barbara Dilligard d/b/a Karaton Services, LLC.

48. In regards to the D20PCP project, Defendant knowingly presented false or fraudulent claims to the Government; with the intent and in order to obtain federal ESSER and CARES Act funds and without going through the proper procurement process.

49. The D4NC North Charleston athletic field project involved the construction of a new field at North Charleston High School, with a budget of $800,000.00. John Cobb stopped the project because he recognized it did not comply with federal procurement protocol and was an improper use of ESSER funds. After stopping the project, Huggins contacted the South Carolina Department of Education, submitting false or fraudulent claims to the State in order to obtain federal funds to be used for the athletic field project, despite the project not qualifying under the ESSER rules and regulations.

50. John Cobb emailed a CCSD employee and Huggins stating that the D4NC Athletic field upgrade for $830,700.00 will not be approved (Oct. 26, 2023). John Cobb included correspondence from the South Carolina Department of Education addressed to a CCSD employee, a

Federal Project Officer, which reads: "Please review the U.S. Department of Education's ESSER/GEER FAQ, item B-9. It states that "the renovation, remodeling, or construction of athletic facilities is not an allowable use of funds, except for those activities whose purpose is to prevent, prepare for, or respond to COVID-19." Despite the denials, Huggins continued to improperly seek and submit fraudulent claims for reimbursement of federal ESSER funds for the D4NC athletic field upgrade, receiving another letter on January 30, 2024, from the South Carolina Department of Education denying the proposal.

51. As of April of 2023, CCSD leadership was internally raising concerns about the D4NC feeder pattern using ESSER funds. In July of 2023, John Cobb requested compliance information and who approved the proposals. Defendant later completed a non-competitive procurement form despite continuing uncertainty about whether an individual was the vendor or the point of contact for D4NC.

52. Despite John Cobb declining to approve projects because they did not comply with federal and ESSER guidelines. These projects were the Charleston Stage project and the D4NC North Charleston High School football field project, both of which did not qualify as sole-source procurements.

53. Following John Cobb's proper denials, Huggins continued to contact the South Carolina Department of Education, with the intent to receive government ESSER funds and asserting that the Charleston Stage project and the D4NC North Charleston High School football field were sole source and therefore qualified for ESSER funding. Thereafter, Charleston County School District proceeded to fund the Charleston Stage requisition in the amount of approximately $81,535.00 from its General Operating Fund ("GOF") and sought to fund approximately an additional $148,795.00 for Charleston Stage through ESSER/CARES reimbursement. The D4NC North Charleston High School football field project was also presented for ESSER funding in an

amount of approximately $830,700.00. All of which were a misuse of federal funds.

## PRAYER

WHEREFORE, Relator, on behalf of himself and the United States, prays that:

i. Defendant cease and desist from violating the FCA;

ii. The Court enter judgment against Defendant:

1. Awarding an amount equal to three times the damages the United States has suffered because of Defendant's conduct, plus civil penalties of at least $5,500 to $11,000, adjusted upward as specified by applicable law, for each violation of 31 U.S.C. § 3729;

2. Awarding Relator the appropriate bounty pursuant to 31 U.S.C. § 3730; and

3. Awarding Relator attorneys' fees and costs of this action, plus interest, including costs to the United States for its expenses related to this action;

iii. Defendant disgorge all sums by which it has been unjustly enriched by its illegal conduct;

iv. The United States and Relator receive all relief, both at law and equity, to which they may reasonably be entitled; and

v. That the Court order such further relief as it deems just and proper.

## REQUEST FOR TRIAL BY JURY

Relator hereby demands a trial by jury on all claims so triable.

[remainder of page intentionally blank]

Respectfully submitted by:

By: s/*Gedney M. Howe, IV*
Gedney M. Howe, IV (Federal Bar No. 13339)
Michael A. Monastra (Federal Bar No. 13587)
GEDNEY M. HOWE, IV, LLC
PO Box 1034
Charleston, SC 29402
Phone: 843-722-8048
Fax: 843-722-2140
Email: Gedney4@gedneyhowe.com
Email: Mmonastra@gedneyhowe.com

-and-

Vanisha Siler Brown (Federal Bar No. 13425)
Siler Law Firm
1318N. Main Street #1353
Summerville, SC 29483
Phone: 843-887-8877
Mobile: 843-467-9869
Fax: 843-564-0556
attorney@thesilerfirm.com

ATTORNEYS FOR PLAINTIFF- RELATOR JOHN COBB

July 27, 2026
Charleston, South Carolina